# In the United States Court of Federal Claims

No. 15-1189
(Filed: 23 July 2021)
NOT FOR PUBLICATION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| MARINE INDUSTRIAL CONSTRUCTION, LLC, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * |
| THE UNITED STATES, | * |
| | * |
| Defendant. | * |
| | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## ORDER

This Order decides plaintiff's motion for site visit prior to oral argument on summary judgment. Marine Industrial Construction, LLC ("MIC" or "plaintiff") accuses the government of wrongful termination for default of a contract for hydraulic dredging of the Quillayute River Waterway, La Push, WA. The government counterclaims for excess reprocurement costs, administrative costs, and liquidated damages. The parties now dispute the need for a site visit of the Quillayute River Waterway prior to oral argument and adjudication of cross-summary judgment motions. For the reasons set forth below, the Court **GRANTS** plaintiff's motion for site visit and anticipates scheduling oral argument on the summary judgment motions at a suitable courthouse in conjunction with the site visit.

## I. Introduction

The initial complaint was filed on 13 October 2015. *See* Compl., ECF No. 1 at 1–3. Plaintiff sued the government for breach of contract, arguing the government wrongfully terminated the contract because plaintiff's delay was excusable. *Id.* Plaintiff asserted three counts against the government: (1) breach of contract for denial of valid claim, requesting the Court find plaintiff encountered 117.5 days of excusable delay and award plaintiff $638,260.81 and an "additional 80.5 days to complete the work"; (2) breach of contract for improper termination for default, requesting the Court convert the government's termination for default "to a termination of convenience"; and (3) breach of contract for improper demand of payment, requesting the Court find the government's demand for $1,031,751.50 wrongful and set it aside. Second Am. Compl., ECF No. 20 at 8–9. On 6 July 2018, the government asserted a counterclaim against MIC for $1,031,751.50 plus interest for "excess reprocurement costs, administrative costs and liquidated damages demanded by the contracting officer's final decision." First Am. Answer to Second Am. Compl. and Countercl., ECF No. 31 at 9. On 29 December 2020, the Court bifurcated the motions contained within the cross-motions for

summary judgment to address four discovery issues the parties raised prior to adjudication. *See* Order, ECF No. 100 at 1 ("29 December Order"). The Court decided the four bifurcated issues as follows: (1) denied plaintiff's motion to strike the government's objections; (2) denied plaintiff's objection to the government's exhibits for lack of authentication; (3) granted the government's request of the Court to disregard alleged inadmissible statements as to certain sections the government calls into question; and (4) denied plaintiff's motion to designate its witness as an expert. *Id.* at 26.

On 24 February 2021 the Court held a status conference to discuss the parties' positions on supplemental briefing necessitated after the bifurcated issues were decided, and the parties agreed to adopt the government's proposed briefing schedule. *See* Order, ECF No. 103. At the status conference, the Court also raised the significance of a site visit and oral argument near the site in dispute (and plaintiff's place of business), noting a site visit may be useful in cases involving "spirited factual disagreements regarding the physical condition" of a unique location at issue. *Id.* at 10:10–10:38 (recording of 24 February 2021 status conference). The Court also raised the issue of the photographs submitted by plaintiff, noting the photographs are small, low quality, and do not appear to give context. *Id.* at 11:20–11:50. The Court questioned whether a site visit would give context to the pictures and allow the Court to see the topography and layout of the site. *Id.* at 12:00–12:18. Also on 24 February 2021, the Court issued an Order adopting the agreed-upon schedule for supplemental briefing proposed by the government and directing the parties to file a joint status report outlining their respective positions regarding: (1) the helpfulness of a site visit to understanding the summary judgment issues; and (2) conducting in-person oral argument at a courthouse location convenient to plaintiff and/or a site visit. *Id.*

On 30 April 2021, after supplemental summary judgment briefing, the parties submitted a joint status report addressing the questions raised in the 24 February 2021 Order. *See* Joint Status Report, ECF No. 106. In the joint status report, plaintiff explains a site visit would be helpful to the Court in understanding the issues on summary judgment, particularly because the government "repeatedly relies upon what a site view would have shown [p]laintiff in many parts of its briefing." *Id.* at 1. Plaintiff states the government "argues that 'much of the debris MIC complains of would have been visibly evident at the requisite pre-bid site view that MIC simply failed to conduct." *Id.* According to plaintiff, the government has made a site visit "germane by repeatedly arguing that MIC would have seen X, Y, and Z, if it had done a site view." *Id.* at 2. Plaintiff further argues a site visit would "allow the court to judge the merits of such repeated and prolific arguments by seeing what . . . would be visible to those who visit the site." *Id.*

The government asserts a site visit is "not essential to resolving the parties' cross-motions for summary judgment" and "would not meaningfully assist the Court in resolving any of the issues before it on summary judgment at all." *Id.* at 3. The government recognizes the Court may have to "consider the evidentiary record of the project site condition in existence seven years ago" but believes "the conditions present at the project site now have no bearing on those issues whatsoever" because "the site has been dredged twice by other companies, and has undergone further changes in appearance as a result of a recent storm." *Id.* at 3–4 (emphasis omitted). The government also states it "does not believe that the burden and logistical uncertainty of facilitating a site visit is justified by the minimal to non-existent benefit that a site visit would provide to the Court." *Id.* at 4.

On 8 June 2021, the Court held another status conference to discuss the parties' 30 April 2021 joint status report outlining their respective positions regarding:  (1) the helpfulness of a site visit to understanding the summary judgment issues; and (2) conducting in-person oral argument at a courthouse location convenient to plaintiff and/or a site visit.  *See* Order, ECF No. 107; Joint Status Report, ECF No. 106.  At the status conference, plaintiff requested the opportunity to reply to the government's response to plaintiff's supplemental brief in support of motion for summary judgment (ECF No. 105), which the government did not oppose.  Order, ECF No. 108 at 3:10–4:00 (recording of 8 June 2021 status conference).  The Court also noted, "[t]he parties agreed at the status conference to conduct in-person summary judgment oral argument at a location convenient to plaintiff to be determined later, in either Oregon or Washington State."  Order, ECF No. 108 at 1.  The parties also agreed at the status conference to set a briefing schedule for plaintiff's request for a site visit.  *Id.*  Following the status conference, the Court granted plaintiff's request to file a reply supplemental brief.  *Id.*  The Court also set a briefing schedule for plaintiff's motion to request a site visit.  *Id.*

## II.  Plaintiff's Motion for Site Visit

Plaintiff filed a motion for site visit on 22 June 2021.  *See* Plaintiff's Mot. for Site View ("Pl.'s MSV"), ECF No. 110.  Plaintiff argues the government "made a site view necessary" by "repeatedly rel[ying] upon what a site view would have shown [p]laintiff in many parts of its briefing."  *Id.* at 3.  Plaintiff asserts "a site view at the same time of year that [the government] argues that MIC should have visited the site pre-bid will . . . allow the Court to get a better overall impression of the site."  *Id.* at 4.[1]  Specifically, it will allow the Court to "view the turbidity and clarity of the water as it relates to the bottom of the basin from the same vantage points that would have been available to" plaintiff, which will help answer questions such as:  (1) whether "the water is clear at that time of year"; (2) how far one can "see through the water at that time of year"; (3) whether the bottom of the basin is visible; (4) whether objects are visible on the bottom of the basin; and (5) whether "everything is covered by sediment."  *Id.*  Plaintiff states this will allow the Court to "place itself in the shoes of a reasonable contractor and make [the] observations firsthand," particularly to determine "if there is any way to see that the material is clay."  *Id.*

The government filed its response to plaintiff's motion for site visit on 2 July 2021.  *See* Def.-Countercl.'s Opp'n to Pl.'s Mot. for Site View ("Def.'s MSV Resp."), ECF No. 111.  The government asserts "a site view would not assist the Court in resolving any of the issues now pending before it, and would needlessly expend both the Court and the [g]overnment's limited time and resources while adding further undue delay to resolving the parties' pending summary judgment motions."  *Id.* at 1.  The government states it "has never alleged that MIC would have been able to visually assess clay content during a site visit, nor that MIC could have visually peered through the water to the bottom of the boat basin."  *Id.* at 6.  The government also argues "the Court's lay observations would not be representative of the assessments that an experienced

---

[1] The government alleges plaintiff failed to perform a pre-bid site visit.  Def.-Countercl.'s Opp'n to Pl.'s Mot. for Summ. J. and Cross-Mot. for Summ. J. ("Def.'s Cross-MSJ"), ECF No. 83 at 21, 40.  The solicitation was released 25 July 2014, and plaintiff submitted its bid on 25 August 2014.  App'x to Def.'s Cross-MSJ at 1–2, 165.  The Court therefore understands the government to allege plaintiff should have visited the site between 25 July and 25 August.

'reasonable contractor' would be expected to make at the time," and a "site visit at a remote location on the other side of the country that has changed significantly over the past seven years in topography, character, and appearance, will be far more likely to confuse the evidentiary record than to enhance the Court's understanding of the facts at issue." *Id.* at 1, 6.  The government notes this is MIC's "third attempt to articulate a valid basis for subjecting the Court and the parties to a cross-country journey to visit a site five hours away from the nearest international airport, on sovereign tribal land." *Id.* at 5.

The government further argues the Court should deny a site visit and issue disposition on the papers because "this case has been pending for nearly six years" and "the parties have completed exhaustive summary judgment nearly a year ago, and have filed several rounds of supplemental briefing in the year since." *Id.* at 9.  Given this, "the legal and factual issues are fully before the Court and are ripe for disposition." *Id.* at 9–10.  The government also requests the Court to hold a "telephonic oral argument, consistent with the method of all prior arguments in this case" or to "conduct argument by video consistent with the current standard practice of the Court of Appeals for the Federal Circuit and regularly utilized by this Court." *Id.* at 10.  The government alternatively requests the Court schedule in-person oral argument "at the Court of Federal Claims in Washington, D.C." if the Court prefers in-person argument.  *Id.*

Plaintiff filed its reply in support of its motion for site visit on 13 July 2021.  *See* Pl.'s Reply in Supp. of Mot. for Site View ("Pl.'s MSV Reply"), ECF No. 112.  Plaintiff explains a site visit will assist the Court because:  (1) "[t]he boat basin is still there"; (2) "[t]he inner channel is still there"; (3) "[t]he outer channel is still there"; and (4) "[t]here is still a bottom to the river." *Id.*  Plaintiff argues the government "wants to deprive the Court of the ability to see firsthand if their arguments hold water," because this case is "about what you can see during [the same] time of year." *Id.*  Plaintiff asserts the site visit will allow the Court "to see for itself what can possibly be seen through the water by someone standing in the place where [the government] argues that [plaintiff] should have been during the relevant time of year." *Id.*

Plaintiff further disputes the government's claim of "logistics [being] impossible." *Id.* at 3.  Plaintiff asserts the government "retains access to the relevant area" as "[t]here is literally a Coast Guard station posted at the Boat Basin." *Id.*  Plaintiff states the government's "claims of being denied access" to the waterway are "belied by the fact they solicited work that was recently performed in the area." *Id.*  Plaintiff also notes, "[i]n-person oral argument will allow the Court and the parties to address both the substance of the motions, the parties [sic] opposing arguments and to answer the Court's questions." *Id.* at 4.  Plaintiff observes, "this Court is a court with nationwide jurisdiction" and "routinely hears matters outside Washington, DC." *Id.*  Plaintiff explains the West Coast is an appropriate location to hold oral argument because:  (1) "MIC is on the West Coast"; (2) "[t]he local branch of the Agency in question is on the West Coast"; (3) "[t]he contract at issue was performed on the West Coast"; (4) "[t]he site is on the West Coast"; and (5) "[t]he West Coast is within the jurisdiction of the [C]ourt and within the practice area of DOJ." *Id.* at 4–5.

## V.  Legal Standards for Conducting a Site Visit and Setting Location for Hearing

A site visit is "a matter that is subject to the discretion of the trial court." *Ark. Game & Fish Comm'n. v. United States*, 736 F.3d 1364, 1380 (Fed. Cir. 2013) (quoting *United States v. Gray*, 199 F.3d 547, 550 (1st Cir. 1999)) (affirming Judge Lettow of this court's decision to conduct a site visit). When a court decides to conduct a site visit, it is "free to make use of its observations, to the extent relevant, in its decision of the case." *Id.* A site visit "help[s] the fact finder determine what the truth is and assimilate and understand the evidence." *Id.* at 1380 (quoting *Glassroth v. Moore*, 335 F.3d 1282, 1289 (11th Cir. 2003)). Site visits are not used to gather improper information but are only used to confirm discrete portions of the arguments. *See id.* at 1379 ("[T]he trial court made clear in its opinion that it relied on the site visit only to 'confirm [] that discrete portions of the Management Area require regeneration work.'"). Other judges on this court have also found a site visit to be helpful in giving context to litigation and disputed facts. *See Moore v. United States*, 54 Fed. Cl. 747, 748 (2002) (Bruggink, J.) ("[W]e note at the outset that the parties and the court conducted a site visit of the representative parcels. That inspection was very helpful in giving context to the other evidence.").

This Court has nationwide jurisdiction to hear cases and find facts anywhere in the United States. *See* 28 U.S.C. § 173 ("[T]he Court of Federal Claims may hold court at such times and in such places as it may fix by rule of court."). This Court routinely hears matters outside Washington, D.C., and is "prescribed with a view to securing reasonable opportunity to citizens to appear before the Court . . . with as little inconvenience and expense to citizens as is practicable." *Id.*

## VI. Review of Plaintiff's Motion for Site Visit

Plaintiff contends the government's arguments in its summary judgment briefing "made a site view necessary." Pl.'s MSV at 3. Plaintiff notes the government's summary judgment briefing argues the following: "that Federal Acquisition Regulations (FARs) [sic] required MIC to take steps to familiarize itself with the site"; "that no one from MIC did a site view"; "that 'much of the debris MIC complains of would have been visibly evident at the requisite pre-bid site view that MIC simply failed to conduct'"; "that 'any faulty assumptions MIC made [regarding clay or debris] based on its own failure to [. . .] conduct the required site visit cannot be attributed to the Government'"; "that '[i]f MIC had conducted a pre-bid site visit as required, MIC likely would have discovered its unreasonable assumption about "miscellaneous debris" quantity was mistaken'"; "that 'there is no reason to think that debris would not have been just as ascertainable if MIC had conducted the same site inspection before bidding'"; and "that 'MIC's error would have been rectified if MIC had complied with the solicitations' requirements [sic] MIC 'examine the site of the work.'" *Id.* (quoting Def.-Countercl.'s Opp'n to Pl.'s Mot. for Summ. J. and Cross-Mot. for Summ. J., ECF No. 83; Def.-Countercl.'s Reply in Supp. of Cross-Mot. for Summ. J., ECF No. 90). Plaintiff's summary judgment motion asserts the solicitation "made material misrepresentations" to "lure new bidders to the project." Pl.'s Mots. for Summ. J., ECF No. 79 ("Pl.'s MSJ") at 3. Plaintiff states the government did not "disclose known quantities of clay in the boat basin materials, and [] represent[ed] that there were no known obstructions to dredging in the boat basin, when it was aware of sunken vessels, and copious amounts of man-made garbage in the boat basin." *Id.* Plaintiff argues the misrepresentations led to plaintiff's delay in performing the dredging of the waterway. *Id.* at 8.

Plaintiff filed photographs of the site as an exhibit to support its misrepresentation arguments.  Mot. for Summ. J., Ex. H, at 4, 38, ECF No. 81-1 (Plaintiff's Response to Defendant's First Set of Interrogatories and Second Request for Production of Documents). Plaintiff argued the photographs show "there was a substantial amount of artificial debris that caused the pipes to clog" consisting of "cables, multiple sunken boats, wire, rope, fishing nets, rubber, metal and plastic."  *Id.* at 37.  Plaintiff asserted the artificial debris "would plug the pipe and result in substantial costs and downtime while the debris was removed."  *Id.*  At the 24 February 2021 status conference, the Court shared that the photographs of the site were low quality and it was hard to understand what context to give the photographs without seeing the site.  Order, ECF No. 103 at 11:20–11:50 (recording of 24 February 2021 status conference). The Court observed a site visit would allow for context to be given to the photographs as well as explanation of how the debris disrupted plaintiff's work.  *Id.* at 12:00–12:18.  Plaintiff's motion for site visit similarly asserts a site visit "will permit the Court to determine what can be viewed on the banks and through the water at the time of years just preceding when the original project bids were due," and plaintiff notes the government "has directly placed these issues into contention."  Pl.'s MSV at 1.

The government conversely asserts it "has never alleged that MIC would have been able to visually assess clay content during a site visit, nor that MIC could have visually peered through the water to the bottom of the boat basin."  Def.'s MSV Resp. at 6.  The government contends plaintiff should have visited the site pre-bid and "the question of what debris (or any other conditions) MIC might have encountered at a requisite site visit is only marginally relevant to the parties' cross-motions for summary judgment anyway."  *Id.* at 7.  The government asserts a site visit is not helpful because "any debris or other circumstances that the Court might encounter at a site visit now—whether helpful or harmful to MIC's case—has no bearing at all on the relevant question of what MIC might have encountered in 2014."  *Id.* at 5.

A site visit in this case will allow the Court to add context to the site photographs plaintiff submitted by allowing the Court to "determine the extent of what could be viewed by a reasonable contractor."  Pl.'s MSV at 4; *Ark. Game & Fish*, 736 F.3d at 1380 (quoting *Glassroth v. Moore*, 335 F.3d 1282, 1289 (11th Cir. 2003)) (describing a site visit may help a court "determine what the truth is and assimilate and understand the evidence").  Judges on this court have found site visits useful in giving context to other evidence in the record.  *See Moore v. United States*, 54 Fed. Cl. 747, 748 (2002) ("[W]e note at the outset that the parties and the court conducted a site visit of the representative parcels.  That inspection was very helpful in giving context to the other evidence.").  In this case, a site visit will also allow the Court to see the layout and topography of the waterway to help it further understand the evidence.  *Ark. Game & Fish*, 736 F.3d at 1380.  This Court exercises nationwide jurisdiction, which includes a responsibility "to secur[e] reasonable opportunity to citizens to appear before the Court . . . with as little inconvenience and expense to citizens as is practicable."  28 U.S.C. § 173.

Plaintiff further argued at the status conference the likely timeline of conducting summary judgment oral argument in Washington State would allow for the same trip to include a site visit, and such a site visit can happen at the same time of year required by the solicitation, allowing the Court to obtain an accurate understanding the site conditions in season, absent changes over time.  Order, ECF No. 108 at 18:05–18:50 (recording of 8 June 2021 status

conference).  Plaintiff explained the site conditions in dispute, such as water level, are consistent year-to-year but subject to change seasonally, and observation of the site during the same time of year would help the Court understand what plaintiff would have seen at a pre-bid site visit and "confirm" the facts in the record.  *Id.* at 25:35–26:52, *see also* Pl.'s MSV at 1.

The Court finds conducting a site visit at the same time of year as when plaintiff failed to conduct a site visit will add further context to the evidence and allow the Court to construe the facts necessary for summary judgment.  *Ark. Game & Fish*, 736 F.3d at 1380.  A site visit will help the Court understand unique conditions at the project location, such as the topography of the river and basin at issue, and add context to the photographic evidence included in the briefing—all of which will "help the [court] determine what the truth is and assimilate and understand the evidence."  *Ark. Game & Fish*, 736 F.3d at 1380 (quoting *Glassroth v. Moore*, 335 F.3d 1282, 1289 (11th Cir. 2003)).  All parties have visited the site, and government counsel specifically noted his visit to the site was in the summertime and would be comparable to the time the Court would conduct a site visit.  ECF No 108 at 20:10–20:45 (recording of 8 June 2021 status conference).  The Court understands the government to assert plaintiff was required to visit the site between 25 July and 25 August.  *See supra* at Section II, n.1.  As counsel for all parties are personally familiar with the contract location and make assertions based on their observations of the site, it is appropriate for the Court to also see the site before adjudicating summary judgment.  *Ark. Game & Fish*, 736 F.3d at 1379 (affirming a site visit where this court "made clear in its opinion that it relied on the site visit only to 'confirm'" disputed facts and characterizations of site conditions).  The contract at dispute in this case, and most of the parties to the case (except for government counsel), are located on the West Coast, making a site visit on the West Coast an appropriate part of the Court's exercise of its nationwide jurisdiction, which includes a responsibility "to secur[e] reasonable opportunity to citizens to appear before the Court."  *See* 28 U.S.C. § 173; *Ark. Game & Fish*, 736 F.3d at 1380.

The government also objects to participating in a site visit because of alleged "'difficulty and expense of arranging' a site visit."  Def.'s MSV Resp. at 8.  The government's cost–benefit analysis as to the value of the site visit is premised on its conclusion a site visit will be of "minimal—and quite possibly negative—value," but plaintiff strongly disputes the government's position regarding the value of a site visit.  *Id.*; Pl.'s Reply at 2 ("[The government] wants to deprive the Court of the ability to see firsthand if their arguments hold water.  They doth protest too much methinks.").  Plaintiff addresses the government's logistical concerns by noting the government currently has a Coast Guard station posted at the waterway and has also solicited work recently performed in the area.  Pl.'s Reply at 3.  The government also argues, for the first time, the site visit would cause undue delay because it would require "significant time."  Def.'s MSV Resp. at 1, 9.  The government, however, does not account for the delay being a result of the Court's bifurcation of issues, which the Court decided in the government's favor.  *See* Order, ECF No. 100.  The government also does not acknowledge the delay was caused by a global pandemic and fails to argue the government will be prejudiced by the delay it alleges or how plaintiff caused delay.  Plaintiff disputes the government's claim a site visit will delay resolution of the case by noting, "[i]t is already July" and stating the site visit "can be combined with a scheduled oral argument to consolidate the time and avoid delay."  Pl.'s MSV Reply at 4.  The Court understands the government to assert plaintiff was required to visit the site between 25 July and 25 August.  *See supra* at Section II, n.1.  The Court does not want to cause delay and

- 7 -

will therefore hold a site visit around the time the government specifies to avoid delay; the Court will also schedule the site visit in conjunction with oral argument to consolidate time and avoid further delay.

The Court's Order following the 8 June 2021 status conference observed, "[t]he parties agreed at the status conference to conduct in-person summary judgment oral argument at a location convenient to plaintiff to be determined later, in either Oregon or Washington State." *Id.* at 1.  The government's most recent briefing, however, "requests that the Court deem the parties' cross-motions for summary judgment submitted on the papers for final disposition," and "[a]lternatively . . . requests that the Court hold telephonic oral argument . . . or conduct argument by video."  *See* Def.'s MSV Resp. at 9–10.  The government also "requests that argument be scheduled at the Court of Federal Claims in Washington, D.C.," "[s]hould the Court prefer in person argument."  *Id.* at 10.  This proposal does not consider the Court's responsibility under 28 U.S.C. § 173 to conduct oral argument in a manner convenient to citizens and fails to acknowledge that prior oral argument was held telephonically because of the global pandemic. The Court observes the government's most recent filing does not contradict or seek to change its previous agreement to conduct summary judgment oral argument in Oregon or Washington State; thus, the Court interprets the government's position as not disputing plaintiff's request to hold summary judgment in the Seattle, WA, area in the near future.  The Court will hold the summary judgment oral argument in the Seattle, WA, area "to secur[e] reasonable opportunity to citizens to appear before the Court . . . with as little inconvenience and expense to citizens as is practicable."  28 U.S.C. § 173.

## VII.  Conclusion

For the foregoing reasons, plaintiff's motion for site visit is **GRANTED**.  The parties shall meet and confer on or before **30 July 2021** to discuss:  (1) the parties' availability for in-person oral argument in the Seattle, WA, area; and (2) the details and plans for a site visit in conjunction with oral argument.  The parties shall subsequently file a joint status report on or before **30 July 2021 at 3:00 p.m. EDT** regarding:  (1) available dates for in-person oral argument in the Seattle, WA, area; and (2) proposed details for conducting the site visit the day before oral argument, including an itinerary and logistics for accessing the dredging site at issue in the cross-motions for summary judgment and a timeline for parties' pre–site visit presentations and site visit.

**IT IS SO ORDERED.**

s/ Ryan T. Holte
RYAN T. HOLTE
Judge